IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 8, 2019 Session

## SANDI LYNN PACK v. JAMES WADE PACK

**Appeal from the Chancery Court for Williamson County**
**No. 46333      Deanna B. Johnson, Chancellor**

_____

### No. M2018-00491-COA-R3-CV

_____

This appeal arises from a divorce action in which the wife was granted a partial default judgment after the husband failed to enter an appearance or file a responsive pleading to the complaint, and failed to file a response or appear at the hearing on the wife's motion for a default judgment. After receiving the order granting the partial default judgment, the husband retained counsel and filed a motion to set it aside pursuant to Tenn. R. Civ. P. 60.02(1) and (5), seeking relief for "excusable neglect" and for "any other reason justifying relief." Following a hearing, the trial court denied the motion to set aside the partial default judgment upon a determination that the husband's conduct precipitating the default was willful. The court also set a final hearing to try the remaining issues, including child support for the parties' minor child and property division. After an evidentiary hearing, the trial court valued the marital estate at well over one million dollars; however, the total did not include the present value of the wife's pension plan, which was classified as marital property and awarded to the wife. Excluding the unknown value of the wife's pension, the court awarded 60% of the marital assets to the wife and 40% to the husband. This decision was based in part on the court's finding that in addition to being the sole wage earner for the family, the wife was primarily responsible for the children and the home while the husband "dissipated marital assets" through stock trading. The husband appeals, contending the trial court erred by (1) failing to set aside the partial default judgment; (2) failing to make an equitable division of the marital estate by not determining the value of the wife's pension plan, designating the husband's stock trading losses as a dissipation of marital assets, and awarding the wife a greater share of the marital estate, despite the fact that the husband was the economically disadvantaged spouse; and (3) failing to award the husband his attorney's fees. We affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Sarah Richter Perky, Franklin, Tennessee, for the appellant, James Wade Pack.

Gregory D. Smith and Brenton H. Lankford, Nashville, Tennessee, for the appellee, Sandi Lynn Pack.

**OPINION**

Sandi Lynn Pack ("Wife") and James Wade Pack ("Husband") married on November 13, 1993, and had two children together. Husband owned three businesses but sold them in 1997 when Wife decided to attend law school at the University of Tennessee in Knoxville. Wife graduated in 2000, and the parties then moved to Brentwood, Tennessee, where Wife became the sole wage earner for the family.

On June 26, 2017, after 23 years of marriage, Wife filed a Complaint for Divorce in Williamson County Chancery Court. In her complaint, she alleged that Husband was guilty of inappropriate marital conduct because he "recklessly and aggressively traded marital funds in the stock market" without her knowledge or consent, "resulting in the loss of large sums of money." Wife requested that the court designate her as the primary residential parent of the parties' youngest child, who was still a minor at the time, and asked that the court grant Husband "reasonable parenting time."

Despite receiving Wife's Complaint, Husband did not hire an attorney and did not file an answer. This was due in large part because Husband believed that reconciliation was possible. On July 25, 2017, in an email to Husband, Wife agreed to allow Husband an additional two weeks to file his answer. Nevertheless, because Husband was still convinced that Wife would eventually dismiss her complaint, he did not do so.

On August 17, 2017, 45 days after Husband was served with the complaint, Wife filed a motion for default. Though Husband received Wife's motion in the mail, he did not open or read it. Consequently, Husband was not present at the hearing on the matter, which was held 22 days later on September 8, 2017. Immediately following the hearing, the court entered an order granting Wife's motion for default.

When Husband received a copy of the order granting the default judgment, he retained counsel and on September 28, 2017, filed his Motion to Set Aside Default Judgment. Husband argued that because the judgment was entered 16 days before the expiration of the mandatory 90-day waiting period for parties with minor children, Tenn. Code Ann. § 36-4-101(b), the judgment was premature. Husband also argued that he was entitled to relief pursuant to Tenn. R. Civ. P. 60.02(1) due to "mistake, inadvertence, surprise or excusable neglect," and under Rule 60.02(5), which allows relief for any other justifiable reason. Husband contended that he was depressed, "not legally sophisticated," and thought reconciliation was possible; thus, he did not fully understand the

- 2 -

consequences of his failure to respond to Mother's filings. Husband claimed he made a "mistake" by not opening mail from Wife's attorney. He further argued that he had a meritorious defense to the allegations in Wife's Complaint and feared that a default judgment would deprive him of the parenting time, spousal support, and equitable share of the marital estate to which he was entitled when considering his contributions to the parties' long-term marriage. For her part, Wife primarily argued that the court should not grant relief, because Husband's failure to respond to Wife's Complaint and motion for default was willful.

Prior to the hearing on Husband's motion, Husband filed an Answer and Counter-Complaint for Divorce, denying he was guilty of inappropriate marital conduct and alleging, as grounds, inappropriate marital conduct and irreconcilable differences. Husband requested equal parenting time and spousal support.

At the hearing on Husband's motion to set aside, Husband acknowledged his error in failing to respond to Wife's Complaint and motion for default. He testified that he was morally opposed to divorce and mistakenly believed that Wife would dismiss her complaint; however, he assured the court that he understood Wife wanted to move forward with the divorce, and he would fully participate in the proceedings.

The trial court denied Husband's motion based on the finding that Husband's failure to respond to Wife's divorce filings was willful. The court also set a final hearing on December 15, 2017, to address the remaining issues including the calculation of child support and the division of the marital estate.

At the commencement of the final hearing on December 15, the parties agreed to limit the issues to those unresolved by the partial default judgment.[1] The parties also stipulated to Wife's proposed Permanent Parenting Plan, pursuant to which Wife was designated as the primary residential parent and was ordered to pay Husband $278 per month in child support.[2]

During the final hearing, the trial court heard testimony from Wife, Wife's father, the parties' adult child, and Husband. In its Memorandum and Order that followed, the court valued the marital estate at $1,461,165.28; however, this total did not include the present value of Wife's pension plan from Caterpillar Financial Services because neither party presented any evidence of its present value. Upon considering the factors listed in Tenn. Code Ann. § 36-4-121(c), the court allocated 60% of the marital estate to Wife and 40% to Husband. This allocation was based, in large part, on the court's findings under §

---

[1] These stipulations are noted in the Memorandum and Order entered on February 13, 2018.

[2] The parenting plan and child support order are not at issue in this appeal.

- 3 -

121(c)(5)(A), which requires the court to consider "[t]he contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation" of assets. The court stated in pertinent part:

> Husband contributed $80,000 in funds he inherited and an unspecified amount of distributions from his business to the marital estate. However, Husband has failed to maintain a stable career during the last twenty-four years, despite having every opportunity to do so. The record is not clear on what, exactly, Husband was doing for the past two decades. Husband contributed to the preservation of the marital residence by performing maintenance on the house. But it is undisputed that Wife—not Husband— was the primary caretaker for the children and the home.
>
> Further, the Court finds Husband's use of marital funds to make risky, short-term trades on the stock market in 2016 was a dissipation of assets . . . . Even if Husband's trading was not a dissipation of marital assets, the Court finds that consideration of his trading is appropriate as evidence of his failure to preserve the marital property.

The court did not address attorney's fees in the final order, and thus, the parties were required to pay their own attorneys' fees.

**ISSUES**

On appeal, Husband asks this court to consider the following:

I.      Did the trial court err in denying Husband's motion to set aside the order of partial default judgment?

II.     Did the trial court make a fair and equitable division of the marital estate when the court (a) failed to value Wife's pension; (b) designated Husband's securities investment losses as dissipation of the marital estate, and as such, awarded Wife a greater share of the marital estate; and (c) did not award Husband a greater share of the marital estate, though the parties marriage was a long-term marriage, Husband was the financially disadvantaged spouse, and Husband was not awarded alimony?

III.    Did the trial court err when it failed to award Husband his attorney's fees at trial?

Additionally, both parties request attorneys' fees incurred on appeal.

- 4 -

## ANALYSIS

### I. PARTIAL DEFAULT JUDGMENT

We review a trial court's ruling on a Tenn. R. Civ. P. 54.02 motion to set aside a partial default judgment under the "abuse of discretion" standard of review. *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012). The abuse of discretion standard does not permit reviewing courts to substitute their discretion for the discretion of the trial court. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Nevertheless, the abuse of discretion standard of review does not "immunize a lower court's decision from any meaningful appellate scrutiny." *Id*.

> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

> [R]eviewing courts should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions. When called upon to review a [trial] court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the [trial] court's legal determinations de novo without any presumption of correctness.

*Id*. at 524–25 (internal citations omitted).

Therefore, we shall review the trial court's decision to determine, where applicable, whether there is a factual basis for the decision in the record; whether the court properly identified and applied the applicable legal principles; and whether the decision is within the range of acceptable, alternative dispositions. *Id*. at 524.

When a party files a motion to set aside a partial default judgment, Rule 60.02 of the Tennessee Rules of Civil Procedure applies. *Discover Bank*, 363 S.W.3d at 494

("[T]he same test for relief applies under Rule 54.02 and 60.02."). The rule lists five circumstances under which a party is entitled to relief:

> (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud . . . , misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

Tenn. R. Civ. P. 60.02.

To set aside a partial default judgment under Rule 60.02(1), the court must consider "whether the conduct precipitating default was willful;" whether the moving party had a meritorious defense; and whether the non-moving party would be prejudiced by granting relief. *Discover Bank*, 363 S.W.3d at 494. Willfulness is a threshold issue under subsection one; therefore, "[i]f the court finds that the defaulting party has acted willfully, the judgment cannot be set aside on 'excusable neglect' grounds, and the court need not consider the other factors." *Id*. Willful conduct is deliberate conduct, but it also includes "conduct that is flagrant and unexplained." *Id*. at 493 (quoting *Hayes v. Hayes*, No. M2006-02356-COA-R3-CV, 2007 WL 2580026, at *2 (Tenn. Ct. App. Sept. 6, 2007)).

As for Rule 60.02(5), though it appears to be a catch-all provision, courts construe it very narrowly. *Hussey v. Woods*, 538 S.W.3d 476, 485–86 (Tenn. 2017). Accordingly, this subsection "affords relief in the most extreme, unique, exceptional, or extraordinary cases and generally applies only to circumstances other than those contemplated in sections (1) through (4)." *Id*. at 486 (quoting *Furlough v. Spherion Atl. Workforce, LLC*, 397 S.W.3d 114, 128 (Tenn. 2013)).

At the hearing on Husband's motion to set aside, Husband conceded that he read Wife's Complaint and that he knew he had to file an answer within 30 days. Husband also acknowledged in his testimony that he sent an email to Wife, asking for more time to file his answer, and Wife granted a two-week extension. Yet, Husband did not file an answer within the two-week extension because, as he explained, he wanted to "fight for my family and my marriage as long as I could." In a similar fashion, Husband ignored Wife's motion for default because he was depressed and did not want the divorce.

It is clear from the testimony and the evidence that Husband made the conscious decision not to respond to Wife's divorce filings as a part of his efforts to keep his marriage intact. And, though Husband's plan was ill-conceived, and perhaps a "mistake"

in one sense of the word, it does not constitute a mistake under Rule 60.02(1). This is because Rule 60.02(1) applies only when the mistake is inadvertent.

In *Tennessee Department of Human Services v. Barbee*, for example, a case cited by Husband, the defendant did not appear for a trial, and the trial court entered a default judgment against him. 689 S.W.2d 863, 864–65 (Tenn. 1985). On appeal, the Tennessee Supreme Court held that the defendant was entitled to relief under Rule 60.02(1) because, through no fault of his own, the defendant was unaware that a trial date had been set. *Id* at 868. Here, Husband was clearly aware of Wife's Complaint; he read it, and he knew he had to respond to it. However, he made the deliberate choice not to file an answer. And, while Husband may have been ignorant of Wife's motion for default, he was willfully so in that he received her motion in the mail and chose not to open or read it.

As previously stated, a finding of willfulness is a threshold issue under Rule 60.02(1), and consequently, Husband cannot obtain relief under that subsection. Nor, is Husband entitled to relief under Rule 60.02(5), because Husband did not allege exceptional circumstances beyond those contemplated by Rule 60.02(1).

Husband also contends the partial default judgment was entered in contravention of Tenn. Code Ann. § 36-4-101(b) because it was entered 16 days before the expiration of the mandatory 90-day waiting period for parties with minor children. We respectfully disagree for two reasons.

For one, the partial default judgment was not "a final judgment," because it did not resolve all the issues in the case. *See In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) ("A final judgment is one that resolves all the issues in the case, 'leaving nothing else for the trial court to do.'" (quoting *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997))). For example, any final decree in an action for absolute divorce involving a minor child "shall incorporate a permanent parenting plan." Tenn. Code Ann. § 36-6-404(a). The partial default judgment did not include a permanent parenting plan. Therefore, it was a temporary or interlocutory order that the trial court could modify. *See Kincade v. Kincade*, No. M2017-00797-COA-R3-CV, 2018 WL 1631415, at *10 (Tenn. Ct. App. Apr. 4, 2018) ("[A]s a general rule a court has the authority to retroactively modify a temporary or interlocutory order." (quoting *State ex rel. Jackson v. Jackson*, No. M2006-00598-COA-R3-CV, 2008 WL 820495, at *5 (Tenn. Ct. App. Mar. 26, 2008))); *see also* Tenn. R. Civ. P. 54.02. As a consequence, the partial default judgment that was entered 16 days before the 90-day period expired did not violate Tenn. Code Ann. § 36-4-101(b).

We also note that nowhere under Rule 60.02 does a trial court's "mistake of law" constitute a ground for relief. *In re Estate of Williams*, No. M2000-02434-COA-R3-CV, 2003 WL 1961805, at *10 (Tenn. Ct. App. Apr. 28, 2003). "Otherwise, 'it is hard to conceive how any judgment could be safe from assault.'" *Id*. (quoting *Food Lion, Inc. v.*

*Washington Cty. Beer Bd.*, 700 S.W.2d 893, 896 (Tenn. 1985)). Thus, the trial court's premature grant of a partial default judgment, if it were "a mistake of law," would not, standing alone, constitute a ground for relief under Rule 60.02.

For the foregoing reasons, we find that the trial court acted within its discretion in denying Husband's motion to set aside the partial default judgment.

## II.   PROPERTY DIVISION

Husband takes issue with the division of the marital property, arguing that it was not fair and equitable because the court (1) did not place a value on Wife's Caterpillar pension plan; (2) incorrectly classified Husband's stock trades as a dissipation of assets; and (3) awarded Wife a greater portion of the marital estate, despite the fact that it was a long-term marriage, Husband was the economically disadvantaged spouse, and he was not awarded alimony.

## A.  Caterpillar Pension Plan

Husband argues that the trial court could not make an equitable division of the marital estate without placing a present cash value on the pension plan, though Husband concedes that neither party presented evidence of the present value of the Caterpillar pension. The only evidence regarding the pension appears in Wife's Statement of Assets and Liabilities, presented at trial as exhibit three, which states that she will receive "$1,083 per month at age 65," and Wife was only 48 years old at the time of trial.

Before equitably dividing the marital property in accordance with Tenn. Code Ann. § 36-4-121(c), the trial court must first place a value on each asset. *Owens v. Owens*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007) (citations omitted). Decisions regarding the value of marital property are questions of fact, and the "burden is on the parties to produce competent evidence of value, and the parties are bound by the evidence they present." *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987) (citations omitted).[3]

The dilemma the trial court faced in this case is similar to the dilemma the trial court and this court faced in *Naylor v. Naylor*, No. W2016-00038-COA-R3-CV, 2016 WL 3923790 (Tenn. Ct. App. July 15, 2016). In *Naylor*, at the start of trial, the parties

---

[3] Generally, Tennessee courts recognize two methods for valuing and distributing pension plans. *Kendrick v. Kendrick*, 902 S.W.2d 918, 927 (Tenn. Ct. App. 1994). One way is "to retain jurisdiction over the case and to defer dividing the pension interest until the pension vests or matures." *Id*. Another way is "to place a present cash value on the pension interest," and upon awarding the plan to the employee spouse, divide the marital property accordingly. *Id*. It is the second valuation method that Husband places at issue here.

entered a joint stipulation regarding the value of the martial assets; however, the stipulation did not set forth any value for two pension plans. *Id*. at *5. Instead, it referred only to the monthly income they generated. *Id*. Further, as is the case here, the husband did not and could not cite to the record wherein he, or anyone, presented evidence regarding the value the court should have assigned to these assets. *Id*. With the lack of competent evidence in mind, the court in *Naylor* resolved the dilemma as follows:

> The Tennessee Rules of Appellate Procedure clearly states that: "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). . . . Here, Husband's own proposed property division did not include a value for the subject pensions. Indeed, Husband chose to enter into a stipulation regarding the values to be assigned to the marital property, which stipulation did not contain any value for the two pensions at issue. Furthermore, Husband put on no proof regarding the present total value of the pensions during trial. **Under these circumstances, we decline to find error where the trial court accepted the parties' stipulation, especially given that no specific evidence was presented on the subject pensions' present values**. As such, we affirm the trial court's finding that the total value of the marital estate was $618,534.00, which does not include any specific present value for the subject pensions, as the parties agreed not to place a present value on these assets.

*Id.* (emphasis added) (footnote and citations omitted).

Because the parties failed to assign a present value to Wife's pension, we cannot conclude that the trial court erred in failing to consider the present value of her pension in making an equitable division of the marital property. *See id*. at *7. Accordingly, we affirm the trial court's determination that the total value of the marital estate was $1,461,165.28, which did not include the present cash value of Wife's Caterpillar pension plan.[4]

---

[4] In a footnote to his argument, Husband also contends that because the court entered a partial default judgment against him, he was not permitted to conduct discovery to determine the value of the pension plan. However, Husband does not support his contention with a citation to the record showing where he was denied the opportunity to conduct discovery. When entering the partial default judgment, the court made it clear that one of the remaining issues to be tried was the property division, and we find no court order denying discovery on this issue. As this court has stated previously, appellate court "'judges are not like pigs, hunting for truffles' that may be buried in the record." *In re Devin B.*, No. W2016-00121-COA-R3-JV, 2016 WL 4520859, at *5 (quoting *Cartwright v. Jackson Capital Partners, L.P.*, 478 S.W.3d 596, 615–16 (Tenn. Ct. App. 2015)). Because Husband did not properly raise and argue

(continued…)

## B. Stock Trading

Husband argues that the division of the marital estate was inequitable because the court erroneously classified his losses in the stock market as a dissipation of marital assets. Although Wife concedes in her brief, "with certain caveats, that [Husband's] losses are not dissipation," she contends the trial court did not offset these losses as dissipation of the marital estate when dividing the marital assets.

In equitably dividing the marital estate, the court must consider the relevant factors listed in Tenn. Code Ann. § 36-4-121(c). *Altman v. Altman*, 181 S.W.3d 676, 682 (Tenn. Ct. App. 2005) (citing *Flannary v. Flannary,* 121 S.W.3d 647, 650–51 (Tenn. 2003); *Kinard v. Kinard*, 986 S.W.2d 220, 230–31 (Tenn. Ct. App. 1998)). The factor at issue here is § 121(c)(5), which provides:

> (A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

> (B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

Tenn. Code Ann. § 36-4-121(c)(5)(A)–(B).

The court found that Husband dissipated the martial assets by using marital funds to "make risky, short-term trades on the stock market in 2016," losing approximately $170,000. Nevertheless, the court went on to rule that "[e]ven if Husband's trading was not a dissipation of marital assets, the Court finds that consideration of his trading is appropriate as evidence of his failure to preserve the marital property."

In its findings of fact, the trial court credited Husband's assertion that he traded stocks to increase his contribution to the marital estate:

> The Court does not doubt that Husband hoped his trades would turn a profit. Indeed, Husband earned a net profit during several years of the

the issue in accordance with Tennessee Rule of Appellate Procedure 27, it is waived. *Id*. (citing *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012)).

parties' marriage. But during the years that he lost money, he lost considerably more than he gained. By 2016, Husband had a net loss of $700,000.

But then, the trial court turned its attention to Husband's trading activity in 2016, which the court characterized as being "of particular concern to this Court":

> In 2016, Husband transferred money to trade on the market without Wife's knowledge or consent. When Wife found out about the transfers, she requested that he stop trading and return the funds back to the parties' joint checking account. She reiterated her request in an email. Husband responded "It is covered. I'm sorry. I will leave."
>
> While Husband covered his initial losses, he did not transfer the funds back into the parties' joint checking account. Instead, he began trading again, without Wife's knowledge, which resulted in additional, substantial losses. As of the date of Wife's Complaint, Husband had failed to return the remaining funds to the parties' account.

As Wife correctly notes in her brief, Husband had a net loss of $700,000 by 2016, and in a two-year span, 2016 and 2017, he lost $171,481, for a grand total of $871,481 in lost assets. Half of that amount is $435,740; yet, the difference between the marital assets awarded the spouses is only $292,233.[5] Accordingly, the trial court did not offset half of Husband's investment losses as a dissipation of marital assets. It merely took his day-trading losses into consideration along with other relevant statutory factors, as the trial court's detailed allocations in its Memorandum and Order clearly reveal.

The manner in which the trial court took into consideration Husband's losses in the stock market over a period of several years is consistent with the approach the trial court took in *Altman v. Altman*, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005). In that case, the husband's dissipation claim focused on the unsuccessful consignment business the wife operated for eight years during the marriage. *Id*. Before the business finally closed, the parties used marital funds to pay business taxes and other operating expenses. *Id*. On appeal, we held that "[s]imple mismanagement of family finances is not dissipation, nor is using marital funds to prop up a failing business." *Id*. (citations omitted). We further reasoned, "Because Mr. Altman failed to present any evidence that Ms. Altman started or operated her business for the purpose of depleting the marital estate, the trial court erred by characterizing Ms. Altman's management of the business as 'dissipation' for the purpose of Tenn. Code Ann. § 36-4-121(c)(5)." *Id*.

---

[5] Wife was awarded assets worth $876,699 while Husband was awarded assets worth $584,466, for a difference of $292,233.

Nevertheless, we affirmed the trial court's decision to award the wife 41.5% of the marital estate upon the determination that while the wife's unsuccessful consignment business could not be characterized as "dissipation" of marital assets, the trial court properly considered the financial losses as a factor in its decision to award the wife a smaller share of the marital estate. *Id.*

Irrespective of whether the court mischaracterized Husband's stock trading as a "dissipation" of marital assets or a "failure to preserve the marital property," this fact alone does not "undermine the validity of the manner in which the trial court divided the parties' marital estate," because, as we stated in *Altman*, "[i]n the final analysis, the appropriateness of the trial court's division depends on its results." *Id.* (citing *Bolin v. Bolin*, 99 S.W.3d 102, 107 (Tenn. Ct. App. 2002); *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997)).

## C. Division of the Marital Estate

Husband also argues that the trial court erred in awarding Wife a greater share of the marital estate when the parties' marriage was a long-term marriage, Husband was the economically disadvantaged spouse, and Husband was not awarded alimony.

"Trial courts have broad discretion in fashioning an equitable division of the marital estate." *Flannary*, 121 S.W.3d at 650. Accordingly, appellate courts "defer to the trial court's division of the parties' marital estate unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence." *Altman*, 181 S.W.3d at 683 (citations omitted). Moreover, and as we stated in *Farnham v. Farnham*:

> It is not this court's role to tweak the manner in which a trial court has divided the marital property. Rather, our role is to determine whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the factors in Tenn. Code Ann. § 36-4-121(c) is consistent with logic and reason, and whether the evidence preponderates against the trial court's division of the marital property.

323 S.W.3d 129, 141 (Tenn. Ct. App. 2009) (citations omitted).

Because trial courts "have broad discretion in fashioning an equitable division of the marital estate," the division of assets "is not a mechanical process." *Flannary*, 121 S.W.3d at 650. And, a "division of marital property is not rendered inequitable simply because it is not precisely equal." *Altman*, 181 S.W.3d at 683 (citing *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002); *Cohen v. Cohen*, 937 S.W.2d 823, 832

(Tenn. 1996)). Rather, an equitable division is accomplished by considering the following factors:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) In determining the value of an interest in a closely held business or similar asset, all relevant evidence, including valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable. Depending on the characteristics of the asset, such considerations could include, but would not be limited to, a lack

of marketability discount, a discount for lack of control, and a control premium, if any should be relevant and supported by the evidence;

(11) The amount of social security benefits available to each spouse; and

(12) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c).

The trial court's Memorandum and Order reveals the extent to which the court analyzed the relevant statutory factors in dividing the marital estate. In fact, the court's assessment of this issue comprised nine full pages, from page 11 through page 19, in which the court made findings of fact concerning 10 of the 12 statutory factors. Included in its assessment was the fact that although Husband contributed $80,000 to the marital estate from his separate property, when they married, his often secretive day-trading, which the court characterized as "wasteful expenditure," squandered in excess of $800,000 of marital assets. While the 17 years of wasteful expenditures would not constitute "dissipation of marital assets," as that term is defined in the statute, it can be considered as a failure to preserve marital assets, as our Supreme Court stated in *Flannary v. Flannary*:

> Under Tenn. Code Ann. § 36-4-121(c)(11), a court must consider "[s]uch other factors as are necessary to consider the equities between the parties." These provisions require the trial court to consider the actions of the parties throughout the course of the marriage. *See Storey v. Storey*, 835 S.W.2d 593, 598 (Tenn. Ct. App. 1992) (looking at Husband's excessive spending during the parties' separation in considering the factors listed in Tenn. Code Ann. § 36-4-121(c)(5)).

121 S.W.3d at 651.

Here, the trial court found that Husband was in his sixties, had not been employed full-time since 1999, and had just recently obtained a real estate license, earning approximately $30,000 per year. Wife, on the other hand, was a licensed attorney in her forties with a stable employment history and a six-figure annual income. Moreover, the court found that the parties' long-term marriage of 24 years favored an equal division of the estate. *See* Tenn. Code Ann. § 36-4-121(c)(1); *see also Harrington v. Harrington*, 798 S.W.2d 244, 245 (Tenn. Ct. App. 1990). Nevertheless, though factors one, two, and four favored an equal or greater distribution to Husband, the most significant factors to the court were factors three and five.

The court found that Husband contributed to Wife's higher earning capacity by supporting her through law school; however, Husband also caused Wife to be terminated from her employment at Caterpillar after threatening Wife's supervisor. As a result, Wife's income decreased from approximately $300,000 annually to approximately $165,000 annually. And, while the trial court acknowledged that Husband performed maintenance on the marital home, the testimony revealed that Wife, not Husband, was "the primary caretaker for the children and the home."

Nevertheless, Husband takes issue with the fact that the trial court did not place more weight on his position as the economically disadvantaged spouse in dividing the marital estate. However, we find that the trial court considered the relevant factors in § 121(c), and the testimony and other evidence in the record supports the trial court's factual findings.

As previously stated, the division of the marital estate is not a "mechanical process," and a court has broad discretion when considering the weight it will place on any given factor. *See Flannary*, 121 S.W.3d at 650. Here, it was significant to the court that Wife was the primary wage earner ***and*** the primary caretaker of the home and the children while Husband engaged in years of often secretive day-trading that resulted in the wasteful expenditure of more than $800,000 of marital assets. For these and other reasons, the court awarded Wife 60% of the marital assets that remained and Husband 40%. Having considered all relevant facts and statutory factors, we are unable to conclude that the trial court abused its discretion in its division of the marital estate.

Having determined that the trial court did not abuse its discretion, we affirm the division of the marital estate.

## III. ATTORNEY'S FEES AT TRIAL

Husband argues that the trial court erred in failing to award his attorney's fees at trial, or in the alternative, a greater share of the marital estate to account for his attorney's fees.

"It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011). At the final divorce hearing, Husband conceded that he waived the issue of alimony, and accordingly, the trial court did not address it. Issues not raised in the trial court cannot be raised for the first time on appeal. *State Dep't of Human Servs. v. Defriece*, 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996) (citing *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991); *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983)). Therefore, we also decline to address it.

## IV.    ATTORNEY'S FEES ON APPEAL

Both parties request attorney's fees on appeal. Whether to award attorney's fees incurred on appeal is a matter within the sole discretion of this court. *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). In determining whether an award for attorney's fees is warranted, we consider, *inter alia*, the ability of the requesting party to pay his or her own attorney's fees, that party's success on appeal, whether that party has acted in good faith, and whether an award of attorney's fees is equitable. *Id.* (citing *Parchman v. Parchman*, No. W2003-01204-COA-R3-CV, 2004 WL 2609198, at *6 (Tenn. Ct. App. Nov. 17, 2004)). In consideration of the foregoing, we have determined that Wife and Husband will be responsible for their own attorney's fees on appeal.

## IN CONCLUSION

Therefore, the judgment of the trial court is affirmed in all respects, and this matter is remanded with costs of appeal assessed against James Wade Pack.

_____
FRANK G. CLEMENT JR., P.J., M.S.